ALLEN DAVISON, Appellee, v. BOARD OF REVIEW OF BUCHANAN TOWNSHIP, PAGE COUNTY, et al., Appellants (and five other cases).

No. 38271.

April 14, 1930.

*Stipe, Davidson & Davidson* and *Paul L. Millhone,* for appellants.

*Stephens & Thornell,* for appellees.

Evans, J.—The lands involved in the controversy are located in Buchanan Township, Page County, and on the westerly side of such township. Thirty-one tracts are involved, and an acreage somewhat in excess of 1,700 acres. The appeals arose out of an effort by the board of review to readjust the assessable value of lands in their township. It appears that the assessor had assessed all the lands of the township substantially on the basis of former assessments. The members of the board of review believed that there should be a readjustment. This belief was predicated upon the alleged fact that the farm lands on the westerly side of the township had increased in value in recent years to a greater extent than had the lands in other parts of the township. The Nodaway River runs across the township from north to south, substantially parallel with the west line of the township, and one mile distant therefrom. It is said that these lands were largely wet and swampy in former times, and subject to overflow; that in later years they had been improved by drainage; that the Nodaway River had been straightened in its course, so that it offered better facilities for drainage and had become less subject to floods. The lands in that part of the township are described as first and second bottom lands. This area of bottom lands comprises approximate-

ly the west one third of the township. East of this area and throughout this township toward the east the lands are higher and rolling, and the soil is said to be thinner and less productive, and the improvements are scant and of modest values. It was upon these hypotheses that the board of review acted, upon its own initiative, to make the readjustment. Pursuant thereto, they raised materially the assessments on the 31 tracts under consideration here, and reduced the assessment on 42 tracts in the easterly part of the township. The membership of the board of review all resided in the easterly part of the township. The Nodaway lands, therefore, had no advocate, and the landowners challenged the justice of the movement. There is much variation and difference of opinion and of points of view indicated in the evidence. Each party used six witnesses on the question of valuation, though they were not all used upon every tract. The evidence was directed, in the first instance, to the actual value of the 31 tracts under consideration. Thereafter, the plaintiffs put in evidence concerning the valuation and assessment of more than 80 other tracts, and the defendant put in evidence the valuation and assessment of more than 180 other tracts. These ''other'' tracts are referred to in the record as ''comparison tracts.''

The record is very voluminous, and is almost indigestible. Respective counsel, however, have co-operated as much as possible to lay before us the material features of the record in such a way as to relieve us from the necessity of discussing the details of the evidence. With commendable ingenuity, counsel on each side have incorporated into their respective arguments charts of their own devising, whereby the valuations put by each witness upon each tract under consideration have been tabulated and charted. These charts are all calculated to aid us, and to serve as a concise abstract of all the evidence on the question of valuation. These charts disclose the valuation put upon each tract by the assessor, by the board of review, by each witness who testified thereto, and by the district court in its final decree. The decree of the district court reduced the increases made by the board of review, and fixed an assessment upon each tract which approximated that originally fixed by the assessor. The parties have confined their arguments to the question of the proper valuation of the tracts: that is, whether

the assessments made by the board of review were fair and equitable, within the meaning of the law; and if not, whether the assessments made by the district court were fair and equitable. No questions of law are argued, except such as inhere in this question of merit. The appellants stress the proposition that the burden was upon the plaintiffs in the district court to show clearly that the assessments made by the board of review were unjust, and that the same burden rests upon them in this court, in view of the *de novo* character of the hearing here. Appellants urge also that all the witnesses for the plaintiffs have predicated their opinions of value upon a wrong basis, and upon a basis which violates Section 7109 of the Code, 1924; that, therefore, such evidence should all be deemed ineffective, as against the assessments fixed by the board of review.

The assessments under consideration were those for the year 1925. The appeals from the board of review were taken in May in that year, the trial was had in the fall of that year, and the final decree was entered in the early part of the year 1926. The case was submitted to us in March, 1930. Where it has been hibernating, and why, throughout the intervening years, is not made apparent in the record.

The ultimate question presented for our consideration is naturally divisible into two parts: (1) Did the board of review err in the fixing of these assessments? (2) If yea, did the district court err in the extent of the relief which it awarded to the plaintiffs?

I. It is important that we first get the point of view of the reviewing board and its line of approach to the problem of these assessments. As already indicated, the various increases of these assessments were all a part of the single scheme of readjustment of assessed values, and the record of the board shows that they were all adopted by one resolution, after notice was given and hearing had. At the same time, reductions were made in the assessments of 42 tracts located in other parts of the township. The dispute has, to some extent, taken the color of a sectional controversy. Though the findings of the board were averse to the west side of the township, and though the members thereof resided in the easterly side, there is nothing in the record to reflect upon the honesty and good faith of the members so acting. Nor were they benefited or interested in

the changes made, in any other respect than all the taxpayers are indirectly interested in such changes. Members of the board must live *somewhere* in the township, and their duties must be exercised *everywhere* therein. Appellants lay much stress upon Section 7109 of the Code, 1924, and on the alleged fact that its provisions were ignored by the plaintiffs in their testimony. We therefore set it forth herein, for later reference. It is as follows:

"7109. *Actual, assessed, and taxable value.* All property subject to taxation shall be valued at its actual value which shall be entered opposite each item, and, except as otherwise provided, shall be assessed at twenty-five per cent of such actual value. Such assessed value shall be taken and considered as the taxable value of such property upon which the levy shall be made. In arriving at said actual value the assessor shall take into consideration its productive and earning capacity, if any, past, present, and prospective, its market value, if any, and all other matters that affect the actual value of the property; and the burden of proof shall be upon any complainant attacking such valuation as excessive, inadequate, or inequitable."

Vardaman, a member of the board of review, and a candid witness, testified to those elements of value which were considered by the board in increasing and making the assessments in controversy. His testimony in that regard was as follows:

"A. They did. The way we took it into consideration was that these pieces of unimproved farm land were considered as part of a whole farm, and operated together with the improvements, which made a difference in its value for assessment purposes. The board considered the fact, for instance, that Mr. McCurdy had valuable improvements on the north side of the road that were convenient to the operation of these pieces of land on which the assessments are in question in this case, that McCurdy was using those improvements in connection with that land south of the road; and the board also considered that the McCurdy land south of the road, which is in question here, would earn more, because of being operated in connection with the improvements on Mr. McCurdy's land on the north side of the road. We took that in consideration in fixing the valuations

on the various pieces of the Franklin McCurdy land. And we took into consideration the fact that Fishell's north half of the northwest quarter of Section 17, north of Cozad's, was used in connection with improvements on other parts of his land, and all operated as one farm; and we also took into consideration that all of Cozad's land was operated as one farm, and placed a valuation upon the unimproved pieces higher than we would otherwise have done, and lower accordingly on the improved pieces. And we did that over the whole township, treating everybody alike as to that. * * * A. The east side of the township is operated more in small farms, while the west side of the township is handled principally by large landowners. The farms on the west side of the township average larger in number of acres than the farms on the east side of the township, so that one man is, on the average, operating more land on the west side of the township than on the east side. We took that into consideration also in fixing these assessed values. Also, we took into consideration the fact that the overhead expenses of the operation of the average farm is greater on the hill land on the east side of the township than it is on the bottom land on the west side of the township. The board also took into consideration the market values of each piece of land, in fixing the values for assessment purposes. The board also took into consideration what each separate piece of land would produce,—its productive capacity, as well as its earnings and the improvements on the same.''

The same witness testified that, after determining the actual value of a tract, in the manner above stated, the board took 60 per cent thereof as the assessable value. That is to say, when it was determined that a tract of land was actually worth $120 per acre, an assessable value of $72 would be placed thereon.

We consider first the question whether there is anything in Section 7109 that requires or justifies the method of assessment described by the witness Vardaman. The objective of this section is to fix upon the actual value of a particular tract. The elements described therein are simply those which inhere in such valuation. They are not dependent on the statute for their influence upon such valuation. They are somewhat in the nature of instructions to the assessors as a class, and are intended to attain uniformity of estimates on the part of assessors.

The law makes it the duty of the county auditor to furnish every assessor with assessment rolls and books and blank forms,— all prepared by official authority, in conformity to the various requisites of the statute. For the purpose of assessing real estate, the county auditor is also required to furnish the assessor with a plat book, which shall indicate the separate tracts and the names of the respective owners. The assessor is required to fix an actual valuation upon every tract that appears upon his plat book. In the cases before us, the assessor performed this duty. It being assumed that the assessor had fixed upon a particular 40-acre tract its full and independent value as such, was the board of review justified in adding to such value on the ground that the owner thereof owned other land contiguous thereto? The theory of the board was that this consideration should add to its value because it participated in the benefit of improvements on other lands "across the road." These other *improved* lands "across the road" might be in another taxing district and in another township. They would presumably be taxed there upon the basis of their actual value. Could such other taxing district add to their valuation because the first 40-acre tract was appurtenant thereto? If a higher valuation should be attached to the unimproved tract because of its connection with the improved tract, the same reason would require that higher valuation be put upon the improved tract because of the appurtenant unimproved tract. The answer of the witness at this point is that, when they added such valuation to the unimproved 40, they lowered it accordingly on the rest of the farm. This explanation is self-contradictory. They did in fact apply the higher valuation to *every* 40-acre tract because it was a part of the larger farm. They did not purport to add it to *one* and to take it off from *another*. Every unimproved 40-acre tract was under the same connection. If one was subject to the rule thus adopted, all were. If it be claimed that the increase added to all the *unimproved* forties could be compensated for by deduction of valuation on the *improved* 40-acre tract, yet there was no legal authority for any such deduction. The assessor was bound, under the statute, to affix an actual valuation to the improved 40. Moreover, such improved 40 might be in another taxing district, which would tolerate no deduction within its own bounds. The theory of the board amounts to this:

That, if the particular 40-acre tract in its actual condition were acquired by another purchaser who owned no adjoining land, its actual value for that reason alone would automatically become less than it was before such acquisition. The farms of at least two of these plaintiffs involve several hundred acres. The theory results that, if one *unimproved* 40-acre tract was sold from one of these farms, its value would thereby be lessened. The value of the *improved* property would then be distributed to the remaining tracts. If the remaining *unimproved* tracts thus subjected to tax for the distant *improvement* were successively acquired by separate owners, this increment would all disappear. Would the remaining *improved* tract take on any additional value because of the severance of the *unimproved* tracts? There is nothing in Section 7109 that either requires or authorizes such a measure or method of valuation. Moreover, the method thus followed was a clear violation of the requirements of Section 6962, which provides as follows:

"6962. *Description of tracts—manner.* No one description shall comprise more than one town lot, or more than the sixteenth part of a section or other smallest subdivision of the land according to the government surveys, except in cases where the boundaries are so irregular that it cannot be described in the usual manner in accordance therewith."

The manifest purpose of the foregoing statute is to forbid lump valuations of large areas, and to require the valuation to be specific, and to be directed to what may be termed the natural units of the government subdivisions of farm lands. The assessor must direct his judgment to the valuation of the particular 40-acre tract. The same rule necessarily applies to the board of review. The method actually adopted by the board of review ignored the restriction put upon it by this statute. It looked upon the value of the whole farm in lump, so to speak, and then purported to distribute such value among the different 40-acre tracts. The method thus adopted not only ignores the statute, but is in itself manifestly impracticable, in that its practical operation necessarily results in inconsistencies. Its operation does not tend to secure uniformity of assessment or of taxation. On the contrary, it offers specious cover for arbitrary valuation.

In view of the fact, therefore, that this erroneous theory

1340

of valuation permeates all the valuations of the board of review, it must be held that the board did err in its resolution of increase.

II. Did the trial court err in the extent of the relief awarded to the plaintiffs? The extent of relief granted in the decree may be indicated by the first and second items appearing in the chart. The first of these was valued by the assessor at $62, by the board at $70, by the court at $65. The second item: By the assessor at $46, by the board at $70, by the court at $55. The foregoing are fairly illustrative of the large majority of the respective valuations as fixed by assessor, by board, and by court. If the court properly found that the valuations fixed by the board had been arrived at through the consideration of improper elements, and were too high, it was bound, under the statute, to fix a proper valuation, to the best of its ability, upon the record. The valuations fixed by the court are sufficiently supported by the testimony for the plaintiffs. The valuations fixed by the witnesses for the defendants carry the same infirmity as did the valuations fixed by the board of review. The defendants' witnesses predicated their valuations upon the same elements as were contended for by the board of review.

There is another infirmity in the appellants' case, as presented here. The chart presented by them is incorporated in their argument. All their argument is predicated upon the figures of the chart. The reply argument of appellees points out more than 160 errors in appellants' chart, as indicated by reference to appellants' abstract. All the errors consist of figures inserted in, or omitted from, the various spaces in the tabulation. They are doubtless all clerical and typographical, and are probably chargeable to negligent proof reading. To illustrate: A witness testified to the value of the tract of one of the plaintiffs at $130. The valuation appears in appellants' charts as $160. The errors pointed out are of this character, though the discrepancy in many cases is less than that here indicated. These errors go to the valuation of the various tracts, and this is the very gist of the controversy. The only way we could take these corrections into intelligent consideration would be to correct the chart and to incorporate the corrections in their proper context. We do not have the time at our disposal for such a task. Thirty printed pages are devoted by appellees to

the specification of such errors. We have verified sufficient of the specifications to confirm their materiality. If we were to perform the task of amending the chart, we should still be without argument from the appellants on the corrected figures. The appellants are somewhat in the position of having presented no argument upon the correct figures. Needless to say that the value of their chart is greatly impaired.

Upon the whole record before us, we reach the conclusion that the valuations fixed by the court are approximately correct.

Its decree is, accordingly,—*Affirmed.*

MORLING, C. J., and FAVILLE, DE GRAFF, and KINDIG, JJ., concur.