C. O. JONES et al., Appellants, v. MILLS COUNTY et al., Appellees.

No. 44076.

1376

April 5, 1938.

Geo. H. Mayne, for appellants.

W. H. T. Wellons, for appellees.

HAMILTON, J.—This is a suit in equity wherein the plaintiffs, appellants, asked the trial court to clear their title to certain real estate of a cloud which it is asserted was cast thereon by reason of what is alleged to be a void tax sale, based on an alleged void assessment of such real estate, and injunctive relief is specifically asked against the issuance of a tax deed and the court is also asked to cancel the tax certificate of purchase, and declare the assessment and tax sale void. The trial court refused the relief prayed for and dismissed plaintiffs' petition and rendered judgment against plaintiffs for costs, and plaintiffs have appealed.

Two propositions are set forth as sustaining appellants' contention: (1) That the assessment was made in tracts greater

than forty acres, in contravention of section 6962 of the 1931 Code of Iowa; (2) that the sale was void because the treasurer did not offer for sale "separately, each tract or parcel of real estate advertised," as provided by section 7252 of said Code. There is the further contention that as to a small portion thereof the description was too vague and indefinite to support a valid assessment or sale.

It is the contention of the appellees that the assessment was not invalid, but was at most only irregular; that section 6962 requiring real estate to be assessed in parcels of forty acres or less does not apply to land assessed to known owners; that plaintiffs' remedy was to go before the local board of review or the state board of assessment and review to correct any irregularities or errors in the assessment, and having failed to resort to such remedy provided by law, they have waived such irregularities and have no standing in a court of equity to correct such irregularities; and, furthermore, that the tax being valid, the alleged cloud upon the plaintiffs' title could be removed by the simple process of redeeming their property from tax sale by the payment of the taxes, penalties, and costs assessed against the same.

 If, as plaintiffs contend, the assessment is absolutely void, then there is no valid tax due, and plaintiffs are right in their contention, and in their demand for equitable relief. Hence, the first question to determine is the validity or invalidity of the assessment.

██ In the first place, the real estate was subject to taxation. The method of assessment of property is found in section 7109, Code 1931, which provides that all property subject to taxation shall be valued at its actual value, which shall be entered opposite each item, and except as otherwise provided shall be assessed at 25 per cent of such actual value. Such assessed value shall be taken and considered as the taxable value of such property upon which the levy shall be made. Upon this assessed value the board of supervisors annually at its September meeting makes the levy. Section 7171, Code 1931. The assessment rolls were introduced in evidence and show that the property was assessed to appellants as owners. The land was situated in Secs. 1 and 2, Twp. 73 N., R. 44 W., in Mills county, Iowa. The land in each section was listed separately and so advertised and sold, and separate certificates of purchase issued.

The sales represented by the two certificates of purchase show sale for taxes for 1931 and 1932. The property was sold at scavenger sale under section 7255 of the Code, which provides that "each treasurer shall, on the day of the regular tax sale each year or any adjournment thereof, offer and sell at public sale, to the highest bidder, all real estate which remains liable to sale for delinquent taxes, and shall have previously been advertised and offered for two years or more and remained unsold for want of bidders, general notice of such sale being given at the same time and in the same manner as that given of the regular sale." This sale was held on January 10, 1935, at which time the land, described in the following manner, to wit:

| | | | |
|---|---|---|---|
| W. ½ N. E. ¼ | Section 1 | Township 73 | Range 44 |
| E. ½ N. W. ¼ | 1 | 73 | 44 |
| N. E. ¼ S. W. ¼ | 1 | 73 | 44 |
| W. ½ N. W. ¼ S. E. ¼ | 1 | 73 | 44 |
| E. pt. W. ½ N. W. ¼ | 1 | 73 | 44 |
| W. pt. E. ½ N. E. ¼ | 1 | 73 | 44 |

was sold for the taxes for 1931, amounting to $542.50 and for 1932 amounting to $568.76, to Mills county for $175. The sale was en masse and a certificate of purchase issued to the county. Another tract in section 2 was similarly described and sold at the same time for the aggregate amount of taxes, interest, and costs, to the county for the sum of $25, and a separate certificate issued for this sale in like manner.

The assessment roll for 1931 shows each of the subdivisions of the land above described was listed at its net actual value and net taxable value, and these values were set opposite the description of each subdivision, the net taxable value being one-fourth of the net actual value. For example: W. ½ N. E. ¼, Sec. 1, Twp. 73 N., R. 44 W.,

| Actual value | Taxable value |
|---|---|
| 7505 | 1876 |

and so on with each subdivision. All these separate valuations were totaled. The millage rate of taxation was then applied to the total to find the amount of the tax. In other words, the millage rate of tax levy was not applied to each separate valuation of each subdivision and the amount of the tax carried out as to each said subdivision; but the valuation was there, and it can readily be seen that an owner desiring to redeem any one of these subdivision tracts could have the treasurer figure its pro

rata share of the total tax. Each subdivision had a fixed assessed valuation, and the rate of tax would be the same on each separate subdivision.

Appellants' contention is that each of these descriptions containing more than forty acres is wrongfully or illegally assessed and the assessment void; for example, the west half of the northeast quarter, which contains two forties, and which was assessed at a fixed valuation, is illegal and void for the reason that the tract contains more than forty acres, and is in violation of section 6962 of the Code. They make the same contention with reference to the entire assessment, and also contend that because the sale was not made of each separate forty-acre tract, the sale is also invalid. Of course, if appellants are correct in their contention that section 6962 applies to known owners, then it must be admitted that the assessment is invalid. However, as early as 1868 in the case of Corbin v. De Wolf, 25 Iowa 124, this court held that the provisions of the law now contained in section 6962 of the Code, requiring real estate to be listed in forty-acre tracts or less, did not apply to land assessed to known owners. See, also, Stewart v. Corbin, 25 Iowa 144; Eldridge v. Kuehl, 27 Iowa 160, 170; Johnson v. Chase, 30 Iowa 308; Ware v. Thompson, 29 Iowa 65; Bulkley v. Callanan, 32 Iowa 461; Martin v. Cole, 38 Iowa 141; Smith v. Easton, 37 Iowa 584. While the law as it now appears in a separate section (6962) might be so understood, upon investigation it will be found that sections 6960, 6961, and 6962 were originally all in one section bearing the title ''Unknown or Deceased Owners'', (see section 1353, Code 1897) and this meaning is traceable in all the corresponding sections back to section 461, Code 1851. The law was separated into three distinct sections by the editors of the Code of 1924, but there is nothing to indicate that the legislature intended to change the meaning which this court had for many years applied to this provision of the statute.

■■■ In the case of Dennis v. School District, 166 Iowa 744, at page 750, 148 N. W. 1007, 1009, this court said:

''It is a rule of construction that changes made by a revision of the statutes will not be construed as altering the law, unless it is clear that such was the intention, and, if the revised statute is ambiguous or susceptible of two constructions, reference may be had to prior statutes for the purpose of ascertaining the intent of the legislature.''

See, also, In re Will of Evans, 193 Iowa 1240, 1244, 188 N. W. 774; Eastwood v. Crane, 125 Iowa 707, 101 N. W. 481. The law in this state with reference to the construction of statutes that have been changed or divided into different sections by the code commissioners is in accordance with the general rule as stated in section 494, 59 C. J., page 897, as follows:

"Change in arrangement. In codifying or revising statutes, a mere rearrangement of the sections or parts of a statute or the placing of portions of what was originally a single section in separate sections does not change the purpose, operation, and effect thereof unless an intention to do so already appears."

See, also, State v. Gardiner, 205 Iowa 30, 215 N. W. 758. There is a statement cited by appellants from an opinion of Justice Evans in the case of Davison v. Board of Review, 209 Iowa 1332, at page 1339, 230 N. W. 304, which is apparently inconsistent with our view expressed herein, but evidently the eminent jurist had not made a careful analysis of the historical background as to the matter, and this precise question was not under consideration in that case.

■■■ We are therefore satisfied the assessment is a valid and legal assessment, and as to any irregularities appearing therein the appellants' remedy would be before the local board of review (section 7132), or they still have a right to go before the state board of assessment and review and have the same corrected before paying their taxes. This would apply to the indefinite description and overlapping of assessments complained of. See section 6943-c27, subdivision 9a.

■■■ Having therefore determined that the assessment of the tax is valid, what standing have the plaintiffs in a court of equity, seeking to enjoin the issuance of a deed upon a tax sale for delinquent taxes validly assessed upon their property, when they have not offered or tendered the taxes due, and have in no way attempted to make redemption of all or any portion of the lands sold? At the time this suit was commenced, and for aught that appears in this record, this remedy provided by statute by way of redemption was still open, and is still open at this time. At least on two previous occasions the land was offered for sale, presumably in a lawful manner, and under a valid assessment and proper notice of sale, before it was put up at scavenger sale and sold to the highest bidder. Plaintiffs therefore, undoubt-

edly, had received actual ample notice, in addition to the notice which the statutory provisions themselves convey (see section 7251, Code 1931; Wrenn v. Berry, 214 Iowa 1191, 243 N. W. 375), that their taxes were due and delinquent. They now come into a court of equity to cancel a tax sale certificate, without making any showing whatever of doing equity, without making any showing whatever that they cannot remove the cloud, of which they complain, from their title by the simple method of redeeming their property from the tax sale. As to a small acreage of this property, the description is vague and indefinite, but the court would not be warranted in cancelling this entire assessment and granting injunctive relief because of this small item. It could readily have been corrected at any time by the plaintiffs, and can still be corrected by going before the state board of assessment and review.

In a very early case, Burlington & M. R. R. Co. v. Spearman and City of Mt. Pleasant, 12 Iowa 112, this court, in discussing a similar proposition, used this language:

"It is further claimed that the property offered for sale by the said defendant, is too indefinitely described; that a sale under such notice might cloud, but could confer no title upon a purchaser at such sale.

"It is true that the description of the land in the advertisement by the said marshal is vague, and perhaps so much so that a sale thereunder could confer no title. We are unable to hold, however, that this is a sufficient reason for restraining the sale. If the taxes are justly due, the sale by the marshal, or a cloud upon the title made by such sale, could be easily avoided by a payment of the tax as levied thereon."

And in the case of Shaw v. Orr, 30 Iowa 355, the court said:

"The property assessed was described in the tax list as 'Steam Mill in South Lansing.' The appellant claims that this description is insufficient. For aught that we know it was the proper description of the real estate as shown by the plat of the town. At all events, it is not denied that it was subject to taxation and was lawfully assessed with the tax charged against it. Under this state of facts plaintiff cannot be relieved from liability for want of a sufficient description of the property to enable a stranger to identify it."

See, also, as bearing generally on this question, the recent case of Witmer v. Polk County, 222 Iowa 1075, 270 N. W. 323.

■■■ The law requires the assessor at the time of making the assessment to inform the person assessed in writing of the valuation, etc. See section 7111, Code 1931. He is presumed to have done his duty in this respect. If there is a cloud cast upon the plaintiffs' title by this assessment and tax sale, they need not resort to litigation in order to remove the cloud. A plain, speedy, and adequate remedy is provided by law by making a statutory redemption. Hanby v. Snyder, 212 Iowa 845, 237 N. W. 339. They knew their taxes would become due in the regular course as provided by the statute, and no demand was necessary. Code section 7210. They should not be permitted to stand by with a duplicate of the assessment roll in their possession, conveying notice of this assessment and the manner and method by which the property is therein described and assessed, without having made any effort in any manner to change or correct the same by the various methods provided by the statutes of this state, and now come into a court of equity and complain of irregularities and vagueness in description and ask the court to declare the assessment entirely void. If, as they contend, the sale is void, and they desire to redeem from only a portion of the land sold, since the property is properly assessed and each tract valued separately, they could, without the consent of the tax sale certificate holder, ask the county auditor or treasurer to figure the tax on any separate tract and tender the amount of such tax with interest and penalty, and the county would be compelled to accept it. This would not be true if the sale were valid, for in such event the holder of the tax sale certificate would have to be consulted and give his consent to partial redemption.

We are satisfied that the trial court was right in refusing the plaintiffs equitable relief, and the decree of the trial court is accordingly affirmed.—Affirmed.

STIGER, C. J., and KINTZINGER, DONEGAN, and RICHARDS, JJ., concur.

MITCHELL, ANDERSON, SAGER, and MILLER, JJ., specially concur.

MITCHELL, J. (specially concurring)—Plaintiffs, owners of

real estate in Mills County, Iowa, brought this action for cancellation and annulment of two tax sale certificates, alleging the tax sales were null and void because of the assessment and sale *en masse* of a large number of separate, distinct government descriptions, and for the further reason that the descriptions under which the property was assessed and sold were illegal and insufficient to identify the property. They also sought an injunction, restraining the issuance of tax deeds based on said certificates.

The trial court denied the relief prayed for and dismissed the petition.

The real estate was assessed in the names of the plaintiffs.

I. With reference to the illegal assessment, plaintiffs allege:

''2. That in the making of the assessments for the taxes for which said property was sold, the West Half of the Northeast Quarter of said Section 1, consisting of two separate and independent forty acre tracts, and assessment of the East Half of the Northwest Quarter of said Section 1, consisting of two separate forty acre tracts, were each wrongfully and illegally assessed in violation of the provisions of section 6962 of the Code of 1924 providing that no one description shall include more than one forty acre tract, and that said assessment of each of said several eighty acre tracts was and is null and void and should be cancelled and held for naught.''

The defense offered by defendants is that the assessment was valid because section 6962 of the Code of 1924 does not apply to property assessed to known owners.

This section has its origin in chapter 152, section 30, 7th General Assembly, which reads as follows:

''When the name of the owner of any real estate is unknown and the assessor finds it impracticable to obtain the same, it shall be proper and lawful to assess such real estate without connecting therewith any name, but inscribing at the head of the page the words, 'owners unknown,' and such property, whether land or town lots, shall be listed as near as practicable in the order of the numbers thereof, *and in assessing lands no one description shall contain more than eighty acres.*''

■■■ Appellants interpret the words, ''and in assessing

lands no one description shall contain more than eighty acres,'' as being a general provision applying to known and unknown owners. We do not concur in this construction. Section 24 of said chapter 152 contained a general provision that lands should be listed by township, range, and section, or part of a section. The said language should be construed with reference to the text in which it is found. It is evident that the legislature intended to differentiate between lands assessed to known owners and lands assessed to unknown owners and in the latter case to limit the assessment to a description of land containing not more than 80 acres.

Section 30 of chapter 152 was carried into the Revision of 1860 as section 737, and the legislature changed the unit of assessment of real estate belonging to unknown owners from the 80-acre maximum found in chapter 152 of the 7th General Assembly, to 40 acres.

The cases of Corbin v. De Wolf, 25 Iowa 124; Bulkley v. Callanan, 32 Iowa 461; Martin v. Cole, 38 Iowa 141, decided under the Revision of 1860, recognize the distinction between known and unknown owners in the assessment of real estate. In the Corbin case, 25 Iowa 124, at page 127, we find the court said :

''Sections 737 and 745 provide, that, in cases where the owners of any lands are unknown, the assessment thereof, and the entry of the same in the tax book, shall be in tracts of not more than one-sixteenth of a section, or other smallest subdivision of land according to the government survey. Now, this express direction, in cases of unknown owners, for the assessment in the smallest government subdivision, is authority, where the owners of land are known, for its assessment in larger tracts. *Expressio unius est exclusio alterius.*''

Section 737, Revision of 1860, was carried into the Code of 1873 as section 826, and the only change made was in the omission of the words ''and in assessing such real property.'' We find no intention on the part of the legislature to change the meaning of the provision that the assessment shall be in 40-acre tracts or less so that it will apply generally to known and unknown owners.

One of the arguments of appellants is that the fact that a period separates the provision for assessment to unknown own-

ers and the provision for the assessment of real estate in subdivisions not greater than 40 acres, and that the word "and" is omitted, established an intention on the part of the legislature to make the latter provision applicable to known and unknown owners.

In the case of Dennis v. School District, 166 Iowa 744, at page 750, 148 N. W. 1007, we stated:

"It is a rule of construction that changes made by a revision of the statutes will not be construed as altering the law, unless it is clear that such was the intention, and, if the revised statute is ambiguous or susceptible of two constructions, reference may be had to prior statutes for the purpose of ascertaining the intent of the legislature."

See In re Will of Evans, 193 Iowa 1240, 1244, 188 N. W. 774. When the Code of 1897 was adopted, the legislature was aware that this court had interpreted the identical provisions found in section 737, Revision of 1860, and section 1353 of the Code of 1897, as referring only to unknown owners of real estate and held that real estate belonging to known owners could be assessed by a single description comprising more than a 40-acre subdivision. It permitted the provision to remain in the statute designated as "unknown owners" in all the Codes. In adopting the Code of 1897 the legislature did not purport to amend section 826 of the 1873 Code or section 737 of the Revision of 1860.

In the division of section 1353 (Code of 1897) into three sentences, and in the omission of the word "and", we do not find an intention on the part of the legislature to change the meaning of the requirement to a general provision applicable to known as well as unknown owners.

Appellants further contend that in the adoption of the Code of 1924, the legislature, by dividing the three sentences comprising section 1353 of Code of 1897, into Code sections 6960, 6961, and 6962, clearly revealed an intention to change the law and that section 6962 now includes *known owners*.

■■■ We do not find sufficient evidence of such intention to warrant us in sustaining this contention. The Code of 1924 is only a compilation of the laws of Iowa. The only change made by the legislature in section 1353 of the 1897 Code was the division of its three sentences into three statutes, apparently

for convenience only, and the three statutes—6960, 6961, and 6962—contain language identical with that found in section 1353. No act was passed by the legislature which adopted the 1924 Code, that amended or changed the meaning or wording of section 1353 of the 1897 Code. The only change made in section 1353 by the adoption of the Code of 1924 was its division into separate sections by the Code Editor. He had the power to divide, but as stated in section 169 of the 1935 Code, he had no power to change the meaning. That all that was accomplished was an editorial division, see memorandum by Code Editor to section 6960, Code of 1935.

Section 494 of 59 Corpus Juris, page 897, reads:

"Change in arrangement. In codifying or revising statutes, a mere rearrangement of the sections or parts of a statute, or the placing of portions of what was originally a single section in separate sections, does not change the purpose, operation, and effect thereof unless an intention to do so already appears."

In Eastwood v. Crane, 125 Iowa 707, at page 715, 101 N. W. 481, 484, we find:

" 'A mere change in phraseology in the revision of a statute will not work a change in the law previously declared, unless it clearly appears that such was the intention of the legislature.' "

Compilation and codification are not legislation. The intention to accomplish a change in the meaning and effect of a statute by a revision must be clear and unmistakable. We do not find such an intention in the case at bar.

Appellants cite Dayton v. Pacific Mut. Ins. Co., 202 Iowa 753, 210 N. W. 945; Rains v. First National Bank, 201 Iowa 140, 206 N. W. 821. The court held in each of these cases that the legislature (extra session of the 40th General Assembly), in adopting the 1924 Code, clearly manifested its intention to amend and change the law as found in the 1897 Code by passing a bill amending the prior statutes. In the case of Dayton v. Ins. Co., 202 Iowa 753, at page 755, 210 N. W. 945, 946, we read:

"There was some doubt in the meaning of the language of

the rule of statute as defined in section 4116, Code of 1897, and this fact finds expression in the opinion of this court in Hanson v. Hammell, 107 Iowa 171, 77 N. W. 839. We will presume that the legislature, in the enactment of the new rule (section 12847, Code of 1924), took cognizance that the old rule was uncertain, and that the doubt, as expressed in the decision of this court, should be removed. The new statute changed the old rule. Section 4116 was amended, revised, and codified by the code revision of 1924, and there can be no doubt that the legislature intended to repeal and did repeal section 4116, Code of 1897, in the enactment of section 12847 of the present Code."

Finding no intention on the part of the legislature that adopted the Code of 1897 and the Code of 1924 to amend or change the meaning of section 737, Revision of 1860, the cases construing section 737, Revision of 1860, for example, Corbin v. De Wolf, 25 Iowa 124, control the construction that must be given by us to section 6962.

We conclude the trial court was right in his construction of section 6962, and it follows that the assessments complained of, being against known owners, are valid.

II. The next contention strenuously argued by the appellants is that the real estate involved, consisting of five separate and distinct parcels or descriptions, was offered for sale and sold *en masse,* as one parcel of land, which was in violation of the provisions of section 7252 (of the 1935 Code).

The real estate was listed, assessed and advertised substantially by the following description:
West Half of the Northeast Quarter,
East Half of the Northwest Quarter,
Northeast Quarter of Southwest Quarter,
West Half of Northwest Quarter of Southeast Quarter,
East part of West Half of Northwest Quarter,
West part of East Half of Northeast Quarter,
Section 1, Township 73, Range 44.
Section 7252 of the 1935 Code is as follows:

"7252. Offer for sale. The treasurer shall, on the day of the sale, at ten o'clock in the forenoon, at his office, offer for sale, separately, each tract or parcel of real estate advertised for sale on which the taxes and costs shall not have been paid."

Early in its career this court was confronted with this problem. In the case of Martin v. Cole, 38 Iowa 141, at page 146, this court said:

"When lands are in different sections or quarters, or are not contiguous and cannot be described as one tract by one description, they do not in fact constitute one tract and cannot so be designated. If two 'forties' properly forming an 'eighty' may be sold together as one tract, no reason can be given why four 'forties' which together constitute a quarter section may not in the same way be disposed of as one tract. The same course of argument requires us to concede that four quarters, eight 'eighties,' or sixteen 'forties,' which are but fractions constituting a section, may be considered as one tract or parcel and so sold. There is no escape from this conclusion. In truth, the section is the unit of our system for the division of lands. Parcels of less quantity into which they are sub-divided are but fractions of the sections. These, while they constitute townships, are never spoken of as fractions thereof. We conclude, therefore, that the term parcel or tract is properly applied to a section."

A few years later in Weaver v. Grant, reported in 39 Iowa 294, at page 296, this court said:

"It is plain that the usual, most convenient, or even necessary description of a body of land will not always alone determine whether it is to be regarded as one or more tracts or parcels. Nothing is more common than for plurality to be joined in unity; for distinct things, having a separate existence and, when considered separately, not only capable of, but necessarily requiring an individual description, to be united so as to form another thing. * * * *It is obvious that its use and nature must determine whether it is to be regarded as a unit, and that its description or name cannot control in that respect. The same rules apply to land.* * * *

"Business may demand that more than one lot be covered by one building. In such a case the use of the several parcels require them to be regarded as united in one. And, in the case of a homestead, it may be of several lots, if together they are not of a greater quantity than is prescribed by the statute." (Italics ours.)

Thus, in the Weaver case it was held where two lots were used together and there was a building on both of them, it was properly described as one tract or parcel of land.

In Greer v. Wheeler, reported in 41 Iowa 85, which is a case in which a sale of certain farm land was made *en masse,* this court said, at page 88:

" 'The deed was not void upon its face *so that it could not be supported by evidence,* nor, indeed, does it show conclusively an unlawful sale, 'for two tracts or lots of land may be sold for taxes together where they are used and occupied as one parcel.' "

■■■ In the case at bar the land involved had been taxed in the same manner for a long period of years. It was owned during all of this time by appellants, who paid the taxes levied and never complained. All of the land is contiguous and in the same section, and this in itself makes out a prima facie case. The parties seeking to set aside the sale must overcome these facts.

This is an action brought in equity to set aside a sale of real estate made for taxes duly levied. For several years the owners paid the taxes assessed in this same manner. They now come into equity and ask equity to help them escape paying an obligation they owe, to wit, taxes. No one likes to pay taxes, but everyone readily admits that if governments are to be carried on taxes must be collected to pay operating costs. Taxes are the individual's share of the cost of government.

In the case of Burlington & M. R. R. Company v. Spearman and City of Mount Pleasant, reported in 12 Iowa 112, at page 116, this court said:

"It is further claimed that the property offered for sale by the said defendant, is too indefinitely described; that a sale under such notice might cloud, but could confer no title upon a purchaser at such sale.

"It is true that the description of the land in the advertisement by the said marshal is vague, and perhaps so much so that a sale thereunder could confer no title. We are unable to hold, however, that this is a sufficient reason for restraining the sale. *If the taxes are justly due, the sale by the marshal, or a cloud upon the title made by such sale, could be easily avoided by a payment of the tax as levied thereon.*"

Thus, in the early days of this court the above-stated rule was announced, and it was followed in a very recent decision, in the case of Witmer v. Polk County, reported in 222 Iowa 1075, 270 N. W. 323. At page 1079 of 222 Iowa (page 325 of 270 N. W.), we said:

"In the case of Barke v. Early, 72 Iowa 273, at pages 274, 275, 276, 33 N. W. 677, 679, this court said:

" 'The tax sales under which defendants claim title were made for delinquent taxes which were not carried forward upon the tax books of subsequent years, as required by Code, section 845. * * *

" 'The amendment in this case does not pertain to the cause of action so far that a new cause of action is presented thereby. It simply alleges facts supporting plaintiff's right to recover. The cause of action arises upon defendant's claim of title based upon the tax deed. Equity requires that plaintiff show an offer to do equity by the payment of the taxes, in order to entitle him to relief. * * *

" 'In this case, equity recognizes the plaintiff's right of action, but will not enforce it unless he does equity by payment of the taxes advanced by defendant.' * * *

"This court, in Iowa National Bank v. Stewart, 214 Iowa 1229, at page 1241, 232 N. W. 445, 451, held:

" 'The taxpayers could not absolve themselves from liability for the payment of those legally imposed taxes by setting up the illegal act of the auditor.

" 'If they have not paid, the tax, to the extent not paid, has not been discharged. The power of the state to compel payment does not end until payment is made.' "

It necessarily follows that the judgment and decree of the lower court must be, and it is hereby, affirmed.—Affirmed.

I am authorized to state that Justices ANDERSON, SAGER, and MILLER concur in this specially concurring opinion.