ELIZABETH D. WITMER, Appellant, v. POLK COUNTY et al., Appellees.

No. 43688.

DECEMBER 16, 1936.

REHEARING DENIED APRIL 9, 1937.

C. S. Missildine, H. Pierce Witmer, J. R. McManus, C. B. Hextell, Roscoe Riemenschneider, and Robert D. Jackson, for appellant.

Carl A. Burkman, F. T. Van Liew, Howard M. Hall, C. I. McNutt, Charles Hutchinson, Vernon R. Seeburger, and Ronald Ryan, for appellees.

MITCHELL, J.—Plaintiff commenced this action in equity to set aside tax sales of her properties to Polk county, pursuant to the so-called "Public Bidder Law", to enjoin the defendants from taking or attempting to take tax deeds, and to remove from said properties the apparent lien of the taxes, upon the following grounds:

(1) The tax sales were invalid because the delinquent taxes for which Polk county attempted to sell her properties were not

carried forward upon the 1934 tax list as required by section 7193 of the Code.

(2) The tax sales were invalid because the attempted adjournments of the sale were not legal and were void.

(3) The tax sales to the county were invalid because the so-called "Public Bidder Law" was not constitutionally enacted.

The defendants filed an answer, alleging validity of the tax sale law, the regularity of all proceedings prior to and during said tax sale, and that the plaintiff was estopped on the grounds that she knew of all of the proceedings of said tax sale and had not been damaged by same, and that she had failed to pay or tender the taxes for which her properties were sold. Defendants also filed certain motions. There was a trial. The district court overruled the motions and entered judgment for the defendants. No appeal was taken by the defendants from the overruling of the motions and we are not confronted with whether or not the lower court was right in so doing. Plaintiff was dissatisfied, and has appealed to this court.

I. The first contention of the appellant is that the tax sale was invalid because the taxes for which her properties were sold had ceased to be liens due to the failure of the county treasurer to enter the amounts of said delinquent taxes upon the 1934 tax list, opposite each parcel of said real estate. The undisputed evidence in this case shows that on the 31st day of December, 1934, the treasurer of Polk county received from the auditor of said county the 1934 tax lists, showing the taxes due and payable in 1935. Sale was set for January 7, 1935—a matter of just seven days. The treasurer of Polk county, according to his testimony, did not have in his office sufficient help to bring forward the unpaid taxes before that time, and the only notation made where there were unpaid taxes was a green lead-pencil check.

Because of the facts hereinafter set out we do not pass upon the question of whether or not the failure of the county treasurer to bring forward the amount of the delinquent taxes, as required by statute, caused these taxes to cease to be liens on said properties.

■■■ It is the contention of the appellees that before appellant can have a court of equity set aside a tax sale for delinquent and unpaid taxes, she must pay or offer to pay the delinquent and unpaid taxes against the property involved. It is conceded that she did not do this. Appellant claims she has a right to

maintain this action without paying or tendering to pay the amount of the unpaid taxes.

In the case of Gardner v. Early, 69 Iowa 42, at pages 45-6-7, 28 N. W. 427, 429, this court said:

"The plaintiff made no tender, nor is it stated in the petition that he is ready and willing to pay whatever amount may be found due the purchaser at the tax sale, and therefore appellants insist that the demurrer for this reason should have been sustained. It is said, as the tax was legally levied and assessed, and it was the duty of the plaintiff to have paid the taxes, that he can only have the deed set aside on condition that he now does that which it was his duty to do. It has been held in a number of cases, where the sale has been held voidable, that the owner must pay the taxes which were legally assessed, as a condition precedent, before the deed will be set aside at his instance. In none of those cases was the deed set aside because the treasurer did not have the power to make the sale. In discussing this question it will be assumed that the taxes at the time of the sale had ceased to be a lien, but it does not follow that, against the owner, no lien could be subsequently acquired by bringing forward the taxes, and entering them in the tax-book for some subsequent year. Be this as it may, the failure to bring forward the taxes clearly did not amount to payment; and, this being so, the owner remained liable to pay the same to the county, and such liability without doubt could have been enforced. Instead of doing this, the land was offered for sale for taxes, which it was the duty of the owner to pay. At such sale, made at the instance of the state and county, a person under whom the defendants claim bid the amount of the taxes due, and became the purchaser, and a deed has been made in pursuance of such sale, which, if valid, vests in the purchaser the title of the owner, and of the state and county. The sale and deed, however, are invalid, but the purchaser has discharged a debt which the owner was bound to pay. The purchaser cannot be regarded as an intermeddler. The taxes were in fact paid by him, and such payment is beneficial to the owner. The deed upon its face is valid, and the plaintiff asks a court of equity to set it aside. This should not be done unless the plaintiff is willing and offers to do equity; that is, pay the taxes or amount paid by the purchaser. In aid of this well-established rule in equity public policy may be invoked,

for the public welfare requires that taxes should be paid, and that, where the owner fails, other persons will do so by purchasing the land when offered for sale by the state and county. The sale is public, and the presumption must obtain that the owner has, or is bound to have, knowledge of the sale, and he is bound to know whether he has paid his taxes. The purchaser should therefore be protected to the extent that the right obtained should not be set aside except on condition of repayment by the owner, provided the taxes have been legally levied, and have not been paid.''

In the case of Barke v. Early, 72 Iowa 273, at pages 274-5-6, 33 N. W. 677, 679, this court said:

''The tax sales under which defendants claim title were made for delinquent taxes which were not carried forward upon the tax books of subsequent years, as required by Code, Section 845. * * *

''The amendment in this case does not pertain to the cause of action so far that a new cause of action is presented thereby. It simply alleges facts supporting plaintiff's right to recover. The cause of action arises upon defendant's claim of title based upon the tax deed. Equity requires that plaintiff show an offer to do equity by the payment of the taxes, in order to entitle him to relief. * * *

''In this case, equity recognizes the plaintiff's right of action, but will not enforce it unless he does equity by payment of the taxes advanced by defendant.''

In the case of Fidelity Inv. Co. v. White, 208 Iowa 519, at page 527, 223 N. W. 884, 888, 225 N. W. 868, we find:

''What amount shall the defendant pay by way of redemption? * * * The rule as to the amount required in order to make redemption is well stated in Barke v. Early, 72 Iowa 273, 33 N. W. 677, as follows:

'' 'Where the tax is valid and enforceable against the land, and the sale is void or voidable, the tax, with penalties, may be recovered by the purchaser at the sale in an action against the owner. If the taxes cannot be enforced against the land by sale, the purchaser can recover the taxes paid by him subsequent to the sale, with six per centum interest.'

''We therefore hold that, in order for the appellant to make

redemption, he shall pay the amount of all the taxes against the property at the time of the sale, not including the aforesaid assessment for paving, and all subsequent taxes shown to have been paid, with interest and penalties thereon, the same as though there had been no sale.''

This court, in Iowa National Bank v. Stewart, 214 Iowa 1229, at page 1241, 232 N. W. 445, 451, held:

''The taxpayers could not absolve themselves from liability for the payment of those legally imposed taxes by setting up the illegal act of the auditor. .

''If they have not paid, the tax, to the extent not paid, has not been discharged. The power of the state to compel payment does not end until payment is made.''

Having in mind the rules of law announced by this court in the cases cited, let us look at this record.

The appellant knew of the amount of taxes levied against this property, not only from the notice published, but her son, who represented her and is one of the attorneys in this case, was present during the scavenger's tax sale now complained of. Why she did not pay the taxes, does not appear. Being the owner of the property, it was her duty to pay the taxes. They were her obligation. The taxes levied were duly levied for the purpose of carrying on the various agencies and branches of government. Continuation of our school system, of our law-enforcing bodies, of the very government itself, depends upon the payment of taxes by those who own property. Appellant is not making this claim as a defense in a suit brought by the county or any other purchaser against her, but has come into a court of equity, asking affirmative relief and asking that because of the failure of the county treasurer to do what the law requires him to do she be relieved from paying taxes properly levied. She does not claim she was misled or damaged in any way, and is seeking thru the aid of a court of equity to be relieved from the payment of taxes duly and properly levied. No third party or innocent purchaser is here involved. The one who is seeking the relief is the one who owes the taxes. Before she is entitled to this relief she must do equity. She must offer to pay or tender the taxes, and until that is done equity will not set aside the tax sale. At the time this case was submitted, by

the payment of the taxes levied against her property she could have redeemed it, for the period of redemption had not expired. If she had paid what was legitimately due, it would not have been necessary for her to have brought this action. In view of these facts, a court of equity will not set aside the tax sale.

██ II. It is strenuously argued that the so-called "Public Bidder Law", pursuant to which the county purported to buy appellant's property, was not enacted in accordance with Section 17 of Article III of the Constitution of the State of Iowa, and is therefore unconstitutional and void. Appellant relies upon the case of Smith v. Thompson, reported in 219 Iowa 888, 258 N. W. 190.

In the case of Scott v. State Board of Assessment and Review, 221 Iowa 1060, at page 1066, 267 N. W. 111, 114, this court, speaking thru Justice Richards, said:

"The opinion in Smith v. Thompson discloses the fact that the legislative act that was involved had the following history: Three bills originated in the House and after passing were received in the Senate. What occurred in the Senate after these bills were received and referred to the sifting committee is not definitely shown; that it is fair to assume that there was prepared and presented to the Senate a substitute for the three bills, the substitute being known in the record as Senate File No. 479. The opinion further discloses that nowhere in the record does it appear that the House of Representatives ever voted upon Senate Bill No. 479, or that the ayes and nays were called and recorded on the question of the final adoption or passage of the act. The opinion recites that under the record it must be held that the act in question was never before the House for a yea and nay vote on its final adoption, and that the adoption of the fragmentary report of the conference committee did not suffice and did not meet the constitutional requirement that a vote 'shall be taken immediately upon its last reading, and the yeas and nays entered on the journal.' It was upon this finding as to the state of the record before the court that it was held that section 17 of article III had not been observed, and the act held unconstitutional. In the case at bar both Houses had passed House File No. 1, and the fact situation determinative of Smith v. Thompson is not before us. It follows that the Smith case does not sustain plaintiff's contention."

In the case of Banta v. Clarke County, 219 Iowa 1195, at page 1199, 260 N. W. 329, 331, this court said:

"I. It is first suggested that chapter 42 of the 46th General Assembly is invalid because the act embraces more than one subject, contains subjects not expressed in the title, and that the procedure in adopting the act was not in accordance with requirements of the constitution and laws of the state. These objections are not seriously urged here, and an examination of the record shows without dispute that the act was duly and legally adopted according to all requirements of the constitution and laws of this state. There is therefore no merit in this objection."

In the case at bar the Senate Journal was offered in evidence, and it showed that Senate File No. 150 was read for information; that there were then offered by various members of the Senate amendments, certain of which were passed and certain of which were withdrawn. And then the following appeared on the Journal:

"Senator Husted moved that the reading just had be considered the third reading and the bill as amended placed on its passage, which motion prevailed.

"The question was, Shall the bill as amended pass?

"On the question, Shall the bill as amended pass? the vote was:"—and the yeas and nays were entered upon the journal.

"The bill as amended having received a constitutional majority was declared to have passed the Senate and the title was agreed to, as amended.

"Senator Husted moved that the vote by which Senate File 150 passed the Senate be reconsidered and the motion to reconsider be laid on the table, which motion prevailed."

Thus is shown conclusively by the Journal that the original bill was read for information; amendments were proposed and voted upon; a motion was made that the reading just had be considered the third reading, which motion prevailed.

This court will presume that the legislature acted in accordance with the law. There is no showing on the part of the appellant that the entire bill and amendments were not read at length before the motion was made. It is all-important that, before a bill is passed upon in its final form, it be read after all debate and proposals of amendment have ceased. The framers

of our Constitution had this in mind. For the protection of the citizens of Iowa they made a part of the Constitution a provision which guarantees that before each vote, every voting member would at least hear every provision of the bill immediately before casting his vote. The purpose, intent and effect of that provision is to let every member of the legislature know exactly what he is voting upon. Upon the record presented to us in the case at bar, we hold that the vote was taken immediately after the last reading of the bill, and the yeas and nays were entered on the Journal, as required by our Constitution.

■■■ III. It is claimed that the title to Senate File No. 150 violates Section 29 of Article III of the Constitution of Iowa by failing to state that it was a bill to amend chapter 449 of the 1931 Code of Iowa.

The intent and purpose of the legislature in passing Senate File No. 150, Chapter 83, of the 46th General Assembly, was to provide a plan for the collection of taxes when the property was sold to the county at scavenger's sale, wherein it would not be necessary for the county to make the series of bookkeeping entries necessary to comply with the former law. It further provided for a more prompt collection of the taxes, by providing that the county could acquire title by tax deed within one year instead of waiting three years, as required by the former law. It provided that when the county took title to the real estate it would manage and sell the same as provided under chapter 449 of the prior law, but if the county was unable to sell the property for cash or for the full amount of delinquent general taxes, interest, penalties and costs, and the current general taxes, section 4, the provision in controversy, provided that all of the taxing bodies would determine the amount that should be accepted for the property.

The necessity for this law became apparent when the collection of taxes thruout the state continually fell off, until it was almost impossible for certain of the government agencies to continue operations due to the lack of funds. The old scavenger law did not work. This record shows that in Polk county, at the last scavenger sale, in 1924, there was sold property against which taxes had been levied in the amount of $70,000, and the amount realized by the county from said sale was only $2,700. With the thought in mind that if the county were permitted to

bid at scavenger sale it would be possible to collect these delinquent taxes, the legislature passed this act.

The rule followed in Iowa with regard to Section 29, Article III of the Constitution, was stated by this court in the early case of State of Iowa v. County Judge, 2 Iowa 280, where at page 281, this court said:

"The intent of this provision of the constitution was to prevent the union in the same act of incongruous matter, and of objects having no connection, no relation. And with this it was designed to prevent surprise in legislation, by having matter of one nature embraced in a bill whose title expressed another. It is manifest, however, that there must be some limit to the division of matter into separate bills or acts. It cannot be held with reason that each thought or step toward the accomplishment of an end or object, should be embodied in a separate act."

And at page 282:

"It is important to bear in mind that to declare an act unconstitutional and void, is the exercise of the highest power of the court, and is not to be resorted to, unless it become necessary. * * * And it is the duty of the courts to give such a construction to an act, if possible, as will avoid this necessity, and uphold the law."

In the case of Cook v. Marshall County, 119 Iowa 384, at page 399, 93 N. W. 372, 377, 104 Am. St. Rep. 283, this court said:

" '* * * Neither is the fact important that a law contains matters which might be and usually are contained in separate acts, or would be more logically classified as belonging to different subjects, provided only they are germane to the general subject of the act in which they are put. The legislature is not limited to the most logical or philosophical classification.' Another court has said: 'It is not intended to prohibit the uniting in one bill of any number of provisions having one general object fairly indicated by its title. The unity of the object must be sought in the end which the legislative act purposes to accomplish.' "

In the case of State v. Gibson, 189 Iowa 1212, at pages 1220-21, 174 N. W. 34, 37, we find:

"The title need not be an index or epitome of the act or its details. * * * And the subject of the bill need not be specifically and exactly expressed in the title. * * * The prohibition is against incongruity. The title must not contain matter utterly incongruous to the provisions of the body of the statute, and that is the limitation of the prohibition. * * * That only is prohibited which by no fair intendment can be considered germane. * * * No matter how broadly the general subject is expressed in the title, the act is valid, unless the statute contains matter utterly incongruous to that general subject. * * * The Constitution is not violated if all the provisions relate to the one subject indicated in the title, and are parts of it, or incidental to it, or reasonably connected with it, or in some reasonable sense auxiliary to the subject of the statute."

It was the intention of the framers of the Constitution to give Section 29, Article III, a liberal construction so as to embrace all matters reasonably connected with the title. In the case of Iowa-Nebraska Light & Power Co. v. City of Villisca, 220 Iowa 238, at page 240, 261 N. W. 423, 425, we find:

"An examination of the development of this provision shows that originally it read:

" 'Every law shall embrace but one subject, which shall be expressed in the title.'

"This provision was soon changed so that it now reads:

" 'Every act shall embrace but one subject, and *matters properly connected therewith;* which subject shall be expressed in the title.'

"It is obvious that the present provision containing the italicized words shows an intention on the part of the framers of the Constitution to give it a liberal construction, so as to embrace all matters reasonably connected with the title and which are not incongruous thereto. Such has been the uniform holdings of this court from an early date."

And at page 241:

"The rules hereinabove referred to have been so frequently declared by this court, so unanimously adhered to, and the reasons therefor so fully expressed that we deem it unnecessary to consider them further. It is the settled law that all matters reasonably connected with the subject named in the title and not

incongruous thereto are properly included in the bill. If therefore the matters contained in this bill are germane, and reasonably connected with the subject named in the title and not incongruous thereto, it must be sustained.''

It is obvious that the intention of the legislature in the passage of the act was to provide a means to assist counties in the collection of taxes by not requiring them to advance the amount of money bid at the tax sale or to wait more than one year to obtain the tax deed. The title of the act carried out the legislature's intent. It was not necessary that every provision of the several sections of the act be enumerated in the title, or that the title be an index of the details of the act. The provisions of the act are properly classified as relating to taxes and the collection thereof.

It therefore follows that the lower court was right, and judgment and decree must be, and it is hereby affirmed.—Affirmed.

PARSONS, C. J., and DONEGAN, ANDERSON, HAMILTON, STIGER, and KINTZINGER, JJ., concur.