STATE OF IOWA, Appellant, v. VIC TALERICO, Appellee.

No. 45098.

MARCH 12, 1940.

Fred D. Everett, Attorney General, Jens Grothe, Assistant

Attorney General, Francis J. Kuble, County Attorney, and James P. Irish, Assistant County Attorney, for appellant.

McMartin, Herrick, Sloan & Langdon, for appellee.

OLIVER, J.—A demurrer to an indictment having been sustained the State has appealed. In the indictment the grand jury accuse appellee of Keeping Liquor Where Beer Is Sold as defined in code sections (now Code of 1939) 1921.126 and 1921.132, and charge that appellee kept liquor for beverage purposes having an alcoholic content greater than 4 per cent by weight in the place of business of a class "B" beer permit.

The basis of the demurrer was the alleged invalidity of section 1921.126, which the indictment charged had been violated. No direct attack was made upon section 1921.132, which is the criminal penalty section. Upon hearing on said demurrer the trial court entered an "Order" reciting that it "finds that said Demurrer should be sustained and indictment dismissed. It is therefore hereby ordered, adjudged and decreed that the defendant's demurrer to said indictment be and the same is hereby sustained."

The appeal of the State was taken from this "Order".

■ I. Code section 13995, governing appeals in criminal cases, provides that "An appeal can only be taken from the final judgment, * * * ." Appellee has moved to dismiss this appeal upon the ground that the "order" appealed from was not a "final judgment". Involved in a consideration of said motion are certain statutes relating to demurrers.

Code section 13790 provides:

"The defendant may demur to the indictment when it appears upon its face, either:

"1. That it does not substantially conform to the requirements of this code, or

"2. That the indictment contains matter which, if true, would constitute a legal defense or bar to the prosecution."

In this case the demurrer was not based upon the failure of the indictment to conform to the requirements of the Code, as set out in subsection 1 of code section 13790. On the contrary it was founded solely upon the claimed unconstitutionality of the statute alleged to have been violated. Therefore, it prop-

erly falls under subsection 2 of said code section in that it alleges only that the indictment contained matter which would constitute a legal defense or bar to the indictment.

Section 13796 of the Code provides:

"If a demurrer is sustained because the indictment contains matter which is a legal defense or bar to the indictment, the judgment shall be final and the defendant must be discharged."

Obviously, the foregoing section applies to the demurrer in this case. However, there was no formal judgment ordering the discharge of the defendant. The finding of the trial court was that the demurrer should be sustained and the indictment dismissed but it was ordered, adjudged and decreed only that the demurrer be sustained. Did this constitute a "final judgment" from which an appeal by the State would lie?

We have heretofore had occasion to consider this proposition in analogous cases. In State v. Fields, 106 Iowa 406, 411, 76 N. W. 802, 804, there had been a demurrer to an indictment on the ground that it contained matter which was a legal defense or bar to the indictment. The demurrer had been sustained and it had been ordered that the defendant be discharged and that his bonds be released. Holding this constituted a final judgment, the court said:

"The order made on the ruling was not in the form of a judgment, but, it, in terms, discharged the defendant and released his bonds, and was, in legal effect, a final judgment."

Referring to a similar order, we said in State v. Bair, 92 Iowa 28, 29, 60 N. W. 486:

"We regard that as a judgment. An action was pending; an issue was made, tried and determined; and the adjudication was final in that proceeding. Every final adjudication of the rights of the parties in an action is a judgment."

In State v. Sexsmith, 202 Iowa 537, 540, 210 N. W. 555, 556, the court said:

"It is not questioned that, if the demurrer was sustained because the indictment contained matter which was a legal de-

fense or bar to the prosecution, the judgment thereon was final and a bar to further prosecution. Section 13796 leaves no room for controversy on that point.''

.Since the case at bar is within the rule of section 13796 we need not consider at length the question of re-submission of the case to the grand jury under section 13797 as discussed in some of the cited cases. It is sufficient to say no attempt to re-submit appears and any such order in this case would have been invalid. State v. Fields, supra. In the case at bar the court found the demurrer should be sustained and the indictment dismissed and ordered, adjudged and decreed that the demurrer be sustained. Under the rule enunciated by the cited authorities we conclude this terminated the case and constituted a final judgment from which an appeal could be taken by the State. Other grounds of appellee's motion to dismiss the appeal have been considered and are overruled.

II. Upon the merits of the case the only question involved is the contention that the statute under which appellee was indicted was unconstitutional and void under Article III, section 29 of the constitution of Iowa which states in part:

''Every act shall embrace but one subject, and matters properly connected therewith; which subject shall be expressed in the title. * * *.''

The act in question is chapter 16, Forty-sixth General Assembly, and its title is as follows:

''AN ACT to amend chapter twenty-five (25), acts of the Forty-fifth General Assembly in extraordinary session, relating to the manufacture, sale and distribution of beer; creating a state permit board and defining its powers and duties; providing for the issuance and revocation of permits authorizing boards of supervisors to adopt rules and regulations and cities and towns to pass ordinances governing the sale and distribution of beer; providing for hearings by the state permit board; and fixing the hours during which beer may be sold, delivered, or consumed.''

The particular portion of the above amendatory act which appellee was charged with having violated was section 7-a which is now part of section 1921.126, Code of 1939, and recites:

1320

"No liquor for beverage purposes having an alcoholic content greater than four [4] percent by weight, shall be used, or kept for any purpose in the place of business of class 'B' permittees, on the premises of such class 'B' permittees, at any time. * * *''

The penalty section for violating any provision of the beer law was contained in the original act and is now section 1921.132, Code of 1939.

A brief history of the beer law is necessary to the consideration of this case. Section 1923 of the 1931 Code defined as liquor and intoxicating liquor, alcohol and various alcoholic beverages, including beer. The following section forbade its manufacture, sale or keeping except in certain cases not here material. It may be noted that in 1933 the legislature enacted a 3.2 per cent beer law which was afterwards in effect repealed and is not here directly involved.

The present beer and malt liquor law was enacted in 1934 as chapter 25 of the Forty-fifth Extra General Assembly, which for convenience will be referred to herein as the original act. This original act amended section 1923 of the 1931 Code by providing that "liquor" or "intoxicating liquor" should not be construed to include beer or malt liquor containing not more than 4 per cent of alcohol. It also in effect repealed the former beer law and enacted new, comprehensive and restrictive regulations governing its manufacture, distribution and sale.

The original act was entitled in substance: An Act to amend sections 1923 (and other sections not here material) of the 1931 Code, all relating to intoxicating liquors, to repeal chapter 38 and to amend chapter 37, Forty-fifth General Assembly, relating to the manufacture, sale and distribution of beer; "defining beer; providing for the regulation of the manufacture, sale and distribution of beer; * * * providing for issuance of permits therefor and by providing penalties for the violation of the provisions hereof."

As above-noted chapter 16, Forty-sixth General Assembly, was an amendment to the original act. Section 31 of the original act had provided for the revocation of a permit if the holder was convicted of a felony, bootlegging or the sale of beer contrary to the act. Section 7 of the amendatory act amended this by adding as grounds for revocation the sale or dispensing

of wines or liquors in violation of law, permitting the mixing or adding of alcohol to beer or other beverages or any violation of the act as amended. This was followed by section 7-a of the amendatory act under which the indictment was found.

The original and amendatory acts with other amendments now constitute chapter 93.2 of the 1939 Code, entitled "Beer and Malt Liquors". It is a comprehensive and general statute regulating these subjects. This chapter is one of the chapters of Title VI of the Code which was "Intoxicating Liquors" in the 1935 Code. In the 1939 Code Title VI is entitled "Alcoholic Beverages".

The beer law withdraws certain alcoholic malt beverages from the classification "intoxicating liquors" and declares them to be nonintoxicating. Intoxicating liquors and nonintoxicating malt beverages are intimately related yet the line of legal demarcation between them is sharply drawn. It is placed at an alcoholic content of 4 per cent by weight. The sale of beverages containing more than 4 per cent alcohol is forbidden. The sale of malt beverages containing not more than 4 per cent alcohol is allowed.

But this legalized beer is not treated as an article of commerce in which any person may lawfully deal. On the contrary the beer act recognizes it as being in a zone which borders upon intoxicating liquor and that its boundaries must be closely guarded to prevent abuses. Therefore, the act permits it to be sold only by certain approved permittees, in certain approved locations and under certain strict regulations therein set out.

The conduct of the business of selling by permittees and their places of business are regulated by prohibitory as well as affirmative requirements. Manifestly, these regulations were in part purposed not only to prevent the sale of intoxicating liquors at said places but also to completely separate and divorce the beer business from any connection with the handling of intoxicating liquors containing more than 4 per cent alcohol. Illustrative of this is the provision in the original act forbidding the display in said places of signs containing the words "bar" or "saloon" or words of like import, the provision for the cancellation of the license of a permit holder who should be convicted of bootlegging, the requirement that the beer to be sold at retail be purchased from certain wholesale permittees

1322

and that containers be labeled as containing not more than 4 per cent alcohol.

 Under the circumstances is section 7-a of the amendatory act void because of failure of the title of said act to comply with the provisions of section 29 of Article III of the constitution qf Iowa? In passing upon the constitutionality of acts of the legislature such acts are given the benefit of a presumption in favor of constitutionality. An act of the legislature will be declared unconstitutional by the courts only when it is clearly, plainly and palpably so, and it is the duty of the courts to give such a construction to an act, if possible, as will avoid this necessity and uphold the law. State v. Woitha, 227 Iowa 1, 287 N. W. 99, 123 A. L. R. 884; Witmer v. Polk County, 222 Iowa 1075, 270 N. W. 323.

 The decisions involving the sufficiency of titles to legislative enactments lay down certain general rules. It is held this constitutional provision should be liberally construed so as to embrace all matters reasonably connected with the title and which are not incongruous thereto or have no connection or relation therewith. It was designed to prevent surprise in legislation, by having matter of one nature embraced in a bill whose title expressed another. However, the title need not be an index· or epitome of the act or its details. The subject of the bill need not be specifically and exactly expressed in the title. It is sufficient if all the provisions relate to the one subject indicated in the title and are parts of it or incidental to it or reasonably connected with it or in some reasonable sense auxiliary to the subject of the statute. It is unnecessary that each thought or step toward the accomplishment of an end or object should be embodied in a separate act. Nor is it important that a law contain matters which might be and usually are contained in separate acts or would be more logically classified as belonging to different subjects provided only they are germane to the general subject of the act in which they are put. Witmer v. Polk County, supra; Iowa-Nebraska Light & Power Co. v. City of Villisca, 220 Iowa 238, 261 N. W. 423; State of Iowa v. County Judge, 2 Iowa 280; Cook v. Marshall County, 119 Iowa 384, 93 N. W. 372, 104 Am. St. Rep. 283; State v. Gibson, 189 Iowa 1212, 174 N. W. 34; Clear Lake Co-op. Livestock Shipper's Assn. v. Weir, 200 Iowa 1293, 206 N. W. 297;

Chicago, R. I. & P. Ry. Co. v. Rosenbaum, 212 Iowa 227, 231 N. W. 646; McGuire v. Chicago, B. & Q. R. Co., 131 Iowa 340, 108 N. W. 902, 33 L. R. A., N. S., 706.

Applying these rules to the situation in the case at bar we think the provision forbidding beverages containing more than 4 per cent alcohol in a place where beer is permitted to be sold is germane to an act relating to the sale of 4 per cent beer. As we have already pointed out the act relating to the sale of beer is highly regulatory in nature and is threaded throughout with provisions designed to completely segregate the legalized handling of 4 per cent malt beverages from the related intoxicating liquors. Nor is it a matter of particular concern that the prohibition contained in section 7-a of the amendment might properly have been the subject of other legislation or have been placed in another chapter of the Code. Under the rules laid down by the authorities above-cited that is not important.

Furthermore, we think it may be fairly said that an act or an amendment to an act relating to the sale by permittees to consumers of 4 per cent beer might reasonably be expected to include such regulatory provisions as the legislature might deem advisable to assist in the enforcement of the act, and that such provisions might properly forbid beverages containing more than 4 per cent alcohol in the places of business of such permittees. Consideration must be given the circumstance that the legislature has by these very acts legalized things heretofore illegal. Were it not for the original act, 4 per cent beer would still be in the category of intoxicating liquor and its sale by individuals prohibited.

The recitation in the title that the act relates to the sale of beer (a 4 per cent alcoholic beverage) indicates regulation and we do not think the inclusion, in the body of an act so entitled, of various prohibitory provisions relating to beverages containing a larger per cent of alcohol would be a legitimate cause for surprise to anyone. As a practical proposition it cannot be said that an interdiction against the presence of intoxicating beverages in a licensed beer parlor would not be reasonably connected with an act relating to the sale of legalized beer. Nor would the fact that the title to the act made reference to certain regulations necessarily invalidate it as to other

regulations not specifically expressed therein but which might be properly inferred from the general subject of the title.

Employing the liberal rules of construction enunciated in the cited cases, we conclude that the provisions of the portion of section 7-a in question are not incongruous to the title of the act, that such provisions are related to and properly connected with the subject of said title as indicated therein and that the title of the act is sufficient to comply with section 29 of Article III of the constitution. It follows that the trial court erred in sustaining the demurrer to the indictment. The ruling upon the demurrer is reversed but under the statute the case may not be remanded. The costs will be taxed to appellant. —Reversed.

HAMILTON, C. J., and HALE, STIGER, BLISS, and MILLER, JJ., concur.