HARRY V. LONG, appellant, v. BOARD OF SUPERVISORS OF BENTON COUNTY et al., appellees.

No. 52097.

(Reported in 142 N.W.2d 378)

1280

MAY 3, 1966.

C. E. Hutchins, of Belle Plaine, Lawrence F. Scalise, Attorney General of Iowa, and Timothy McCarthy, Solicitor General of Iowa, of Des Moines, for appellant.

Bordewick, Fischer & Fischer, of Vinton, for appellees.

LARSON, J.—This action in mandamus brought by a resident and taxpayer of Benton County, Iowa, under chapter 661, Code of Iowa 1962, to compel defendants Board of Supervisors and County Auditor of Benton County, Iowa, to keep the county courthouse open for the transaction of business five and one-half (5½) days per week, including Saturdays from 8 a.m. to 12 noon, excepting legal holidays, as provided in section 10, chapter 307, Laws of the Sixty-first General Assembly, was on motion dismissed by the trial court. It found inter alia that chapter 307, Laws of the Sixty-first General Assembly, was unconstitutional in part, that this Act embraced more than one subject and the subject matter therein was not adequately indicated in the title, in violation of Article III, section 29, of the Iowa Constitution, and that, even if validly enacted, this section does not place an affirmative duty on the board and auditor to enforce its provisions so as to justify the action of mandamus. We cannot agree.

I. Chapter 307, Laws of the Sixty-first General Assembly, provides: "AN ACT relating to the compensation of county officers, deputies and clerks." Section 1 sets out the annual compensation of the county auditor, treasurer, recorder, and clerk of the district court computed according to table. Section 2 sets out the *duty* of the board of supervisors to provide additional compensation to the county treasurer. Section 3 amends section 331.22, Code of Iowa 1962, relating to compensation of supervisors. Section 4 amends section 331.23, Code of 1962, relating to maximum session pay of supervisors. Section 5 makes it the

*duty* of the board to fix future salaries of officers in conformity with the schedule and census reports. Section 6 provides for the salary of deputies and makes it the *duty* of the board to certify salaries to the auditor. Section 7 authorizes county treasurers to appoint a deputy collector of taxes and sets the salary of the deputy. Section 8 repeals sections 340.1, 340.2 340.3, 340.5, 340.8 and 340.11 of the 1962 Code relating to salaries of county officers. Section 9 amends section 338.1 relating to compensation of sheriffs for care of prisoners. Section 10 provides: "It is hereby declared to be the policy of this state that all courthouses shall be open for the transaction of business five and one-half (5½) days per week. Such period shall include Saturdays from 8 a.m. to 12 noon, excepting legal holidays."

Defendants maintained that the title and the first nine sections of chapter 307 concern only the subject of compensation, referred to in the designated chapters of the Code, while section 10 deals only with duties of management of courthouses, referred to in chapters 332 and 333 of the Code, and that they are and were intended to be wholly separate and distinct subjects unrelated to and not connected with each other.

Plaintiff's position, stated simply, is that the subject of compensation includes, and was intended to include, duties to be performed by the said officers, that the duty provided in section 10 placed on the board and county auditor an additional duty reasonably related and germane to the term "compensation" as used in this Act.

Article III, section 29, of the State Constitution, provides: "Every act shall embrace but one subject, and matters properly connected therewith; which subject shall be expressed in the title. * * *."

Controversy has often arisen as to the proper application of this provision. In Volume 8, No. 1, Drake Law Review, the author of an article on constitutional form of a bill, states there have been about ninety such cases involving this point before our court and, in all but nine, statutes have been held valid. As a result of these opinions we have some rather definite and specific guides to aid in determining such questions.

II. It has been uniformly held that section 29, Ar-

ticle III, of the Iowa Constitution, should be liberally construed so one Act may embrace all matters reasonably connected with the subject expressed in the title and not utterly incongruous thereto. Independent Sch. Dist. v. Iowa Empl. Sec. Comm., 237 Iowa 1301, 1313, 25 N.W.2d 491, and citations; State of Iowa ex rel. Weir v. County Judge of Davis County, 2 Iowa (Cole) 280, 282; Carlton v. Grimes, 237 Iowa 912, 944, 23 N.W.2d 883; Beaner v. Lucas, 138 Iowa 215, 112 N.W. 772, and citations; 50 Am. Jur., Statutes, sections 187 and 209. In Weir we recognized the intent of section 29 and stated it was "the duty of the courts to give such a construction to an act, if possible, as will avoid * * * [a declaration of unconstitutionality] and uphold the law." In Beaner we referred to Johnson v. Harrison, 47 Minn. 575, 50 N.W. 923, 28 Am. St. Rep. 382, where the purpose of such a section was discussed. The court there said that while the provision is mandatory, yet it is to be given a liberal, not a strict, construction. It was to prevent so-called "log-rolling" legislation, and was not intended to embarrass legislation or hamper the legislature. It was pointed out in these cases that to constitute duplicity of subject, an Act must embrace two or more dissimilar and discordant subjects that by no fair intendment can be considered as having any legitimate connection with or relation to each other. All that is necessary is that the Act should embrace some one general subject, and by that is meant, merely, that all matters treated therein should fall under some one general idea and be so connected with or related to each other, either logically or in popular understanding, as to be part of or germane to one general subject.

Speaking on this subject, in Burlington and Summit Apts. v. Manolato, 233 Iowa 15, 18, 7 N.W.2d 26, 28, 144 A. L. R. 251, we said: "Legislation will not be held unconstitutional unless clearly, plainly, and palpably so. If the constitutionality of an act is merely doubtful or fairly debatable, the courts will not interfere."

In the landmark case of State v. Talerico, 227 Iowa 1315, 1322, 290 N.W. 660, 663, we said this constitutional provision was designed to prevent surprise in legislation, to prevent the union in one bill of matters having no fair relation to each

other. "It is sufficient if all the provisions relate to the one subject indicated in the title and are parts of it or incidental to it or reasonably connected with it or in some reasonable sense auxiliary to the subject of the statute. It is unnecessary that each thought or step toward the accomplishment of an end or object should be embodied in a separate act. *Nor is it important that a law contain matters which might be and usually are contained in separate acts or would be more logically classified as belonging to different subjects* provided only they are germane to the general subject of the act in which they are put." (Emphasis supplied.) Also see Miller v. Schuster, 227 Iowa 1005, 1014, 1015, 289 N.W. 702, 707, where it was said: "It is only in extreme cases, where unconstitutionality appears beyond a reasonable doubt, that this court can or should act, unless we are to depart from fundamental and well established principles of construction, which we are convinced are sound and should be adhered to."

The primary and universally recognized purpose of the one-subject rule is to prevent "log-rolling" in the enactment of laws, the practice of several minorities combining their several proposals as different provisions of a single bill, and thus consolidating their votes so that a majority is obtained for the omnibus bill where perhaps no single proposal of each minority could have obtained majority approval separately. It was designed to prevent riders from being attached to bills that are popular and so certain of adoption that the riders will secure adoption, not on their own merits, but on the merits of the measure to which they are attached.

Another purpose served by the one-subject rule is to facilitate orderly legislative procedure. By limiting each bill to a single subject, the issues presented by each bill can be better grasped and more intelligently discussed by legislators. Also, limiting each bill to one subject means that extraneous matters may not be introduced into consideration of the bill by proposing amendments not germane to the subject under consideration. See 42 Minnesota Law Review 391.

Sometimes it is difficult to determine whether a particular statute deals with only one subject, but, as we have seen, con-

siderable liberality is indulged in defining the scope of the term "subject". While it is recognized there are numerous subjects of legislation and only one of these may be embraced in any one Act, the provisions involved in one Act may be multifarious. Thus, it is the general rule that all matters, however diverse they may be, which have a logical or natural connection with or are germane to the general subject, may properly be included in one statute. See Statutory Construction, by Crawford, section 98, page 138; Johnson v. Harrison, supra, 47 Minn. 575, 50 N.W. 923, 28 Am. St. Rep. 382; Allen v. State, 129 Neb. 722, 262 N.W. 675; City of Owensboro v. Hazel, 229 Ky. 752, 17 S.W.2d 1031; State v. Allen, 152 Ore. 422, 53 P.2d 1054. In the Nebraska case it was said the "subject" of an Act is the matter or thing which forms the ground work thereof, and may include many parts or things so long as they are germane to it and are such that, if traced back, will lead the mind to the subject as the generic lead.

III. "Compensation", as used in the title to this chapter, implies payment for services to be rendered by those mentioned therein. Although perhaps somewhat old-fashioned, it contemplates the performance of certain duties, and we think those obligations reasonably inhere in that subject. Viewed in that light, the title here was sufficiently broad to include section 10 pertaining to the time of service. The term "compensation" is defined in Webster's Third New International Dictionary as: "2. (d) payment for value received or services rendered." Funk & Wagnall's New Standard Dictionary of the English Language defines it as: "n. 1. The act of compensating, the state of being compensated, or that which compensates; * * * payment; * * * especially, an equivalent in value or the like." Thus, it would seem those interested in a bill having this express subject would be alerted to the provisions that may fairly be included as a requisite to these officers' compensation. The fact that such provisions might have been included in another Act relating to another chapter is of no great import. The vital question is whether they are reasonably connected with the express subject in the title and could reasonably be expected in such a bill.

It is true, section 10 would have been germane to other sub-

jects, such as an Act to amend chapters 332 and 333 of the Code relating to duties of the board of supervisors and the county auditor, and perhaps these changes would have been better in such an Act. It is also true this section could have expressed the duty imposed upon these defendants in a more direct manner. But these are not matters of our concern. It is clear to us the legislature, in chapter 307, Laws of the Sixty-first General Assembly, meant to and did increase and change the compensation of certain county officers, including the defendants supervisors and county auditor. It is clear it intended to prescribe certain duties of these officers by which they would earn that compensation, and among them was a requirement that their offices be open for public business 5½ days per week including Saturday mornings, except on holidays. No other reasonable meaning could be attributed to this legislation. No other understanding is logical.

 The learned trial court recognized and correctly held that the legislature had the authority and power to prescribe, to enact a law in these regards, and that when properly enacted it was the court's duty to enforce it. The court also recognized it is not the province of the judicial department to encroach upon the prerogatives of the legislative department nor to question its wisdom or policy in the enactment of any law. Kalbach v. Service Station Equip Co., 207 Iowa 1077, 1079, 224 N.W. 73; In re Guardianship of Wiley, 239 Iowa 1225, 1232, 34 N.W.2d 593. However, we cannot agree with the trial court that section 10 is so vague, inconsistent or self-contradictory, as to be meaningless, nor that it is so general and uncertain that an action in mandamus cannot be maintained. We are satisfied that section 10 places a duty on defendants to see that the courthouse is open on Saturday mornings, that this duty is not a separate subject, but is related and germane to the express subject of "compensation".

IV. Appellees contend that even though section 10 of chapter 307, Acts of the Sixty-first General Assembly, does express a matter properly connected with the express subject "compensation", yet it must fail because the entire subject is not sufficiently expressed in the title. Again we cannot agree.

The constitutional provision in Article III, section 29, embodying the one-subject rule, also contains an independent requirement that each bill contain a title which expresses the subject of the bill. Although these requirements have independent operation, have an independent historical base, and a separate purpose, they are closely related. The title provision was primarily directed to the legislative process. Because it was felt that an Act making substantial grants to private persons was often smuggled through the legislature under an innocent and deceptive title, public demand arose for a constitutional requirement that each bill contain a title which adequately .expresses the subject matter of the bill. The primary purpose of the title requirement is to prevent surprise and fraud upon the people and the legislature. Thus, if the title fails to express adequately the subject matter of the Act or is misleading in its expression of the subject of the Act, then a portion or all of the Act must be held invalid. While it is the purpose of the title requirement to prevent legislation by stealth, the one-subject rule also aids in the eradication of this practice and so complements its sister requirement. 42 Minnesota Law Review 392, and cases cited therein. We fail to see any indication that the title in chapter 307, Acts of the Sixty-first General Assembly, was in anyway deceptive or against private or public interest, and are convinced the express subject "compensation" is adequate to embrace the duties required of the officers concerned in section 10 as well as other sections in that bill.

Lexicographers have defined "compensation" as the equivalent of the expenditure of human energy. Austin Co. v. Brown, 121 Ohio St. 271, 167 N.E. 874. In Teders v. Rothermel, 205 Minn. 470, 473, 286 N.W. 353, 354, the court said, " 'Compensation', accurately used, means payment in money, or other benefit. which will compensate in the strict sense, that is, make even, or be measurably the equivalent of that for which it is given."

In State v. Cowen, 231 Iowa 1117, 1131, 3 N.W.2d 176, 184, we ourselves said, "All that the Constitution requires is that the subject embraced in the act shall be reasonably connected with the title and germane to it, and that the title shall be calculated to give notice of the [contents of the] statute."

In Croft v. Lambert, 228 Ore. 76, 357 P.2d 513, 88 A. L. R. 2d 1227, a 1960 case, which was an action against the sheriff, the attack was made on a statute which forbade the deputies and clerks from engaging in off-duty employment. The court said the statute was not invalid on the ground that the subject was not covered in the title, that only where the title is so deceptive as to take the legislature by surprise and the provision under attack was not germane would the Act fail.

A complete reading of this chapter 307, Acts of the Sixty-first General Assembly, leads us to the conclusion that nothing appears therein which would indicate a "log-rolling" or deceptive purpose, or that reference to compensation of certain officers in the title was not sufficient to give notice of the probable contents of the bill relating to duties or obligation. While it might have been better to have stated the Act related to duties and salaries of county officers, we think the term used was sufficient, and reasonably would not mislead the legislators or the public. We are satisfied the title was adequate. As bearing on this point, see Sutherland Statutory Construction, Third Ed., by Horack, Volume 1, sections 1711, 1714, 1718; 82 C. J. S., Statutes, section 229; 50 Am. Jur., Statutes, sections 170 to 173, pages 149–155.

V. Appellees further contend the effect of section 10 is to wrongfully amend chapters 332 and 333 without any reference thereto in the title or in the provisions themselves. This conclusion they draw from the fact that certain discretion is placed in the board of supervisors to manage and control the use of county grounds and buildings. See sections 332.3(19) and 333.1(8). There is no merit to this contention. The subject matter here involved was services and compensation, not housekeeping of county buildings. The mere fact that the express duties may modify a previous duty and affect another subject matter will not require specific reference to it in the proposed bill. While such an amendment to those sections would have accomplished the same result, it was not required. Either method was proper, neither exclusive. State v. Talerico, supra, 227 Iowa 1315, 1322, 290 N.W. 660, 663. The obvious result here is that the discretion of these officers is modified or limited and they

must now keep the courthouse open for the transaction of business at the stated times.

██ ██ VI. Some complaint is also made that section 10 does not prescribe a duty on the defendants specifically, that there is no direct reference to them therein, nor is there mandatory language used directing them to keep the courthouses open. It is true there is no mandatory direction that the boards of supervisors and county auditors, as such, shall keep the courthouses open on Saturday mornings. However, the meaning is not in doubt. The language as to policy used here is not new. We have consistently held that where the legislature declares the policy of this state, that declaration is a directive to the affected officers and it becomes their duty to execute that policy. As illustrative of this rule, we have said as to chapter 275 of the Code that procedure of the board and superintendent must be in accordance with general policies prescribed in the chapter. Wall v. County Board of Education, 249 Iowa 209, 229, 86 N.W.2d 231; Liberty Consolidated School District v. Schindler, 246 Iowa 1060, 1066, 70 N.W.2d 544. Here, among others, the officers referred to in section 10 of chapter 307, Acts of the Sixty-first General Assembly, are defendants board of supervisors and the county auditor as caretakers of the county property. The declaration applied to them established a duty to be performed. Refusal to do so without a just cause must be found to be arbitrary and capricious.

Plaintiff alleged in his petition that on July 17, 1965, a Saturday, he had attempted to gain entrance to the Benton County Courthouse to do business with certain offices therein and found it closed. It was disclosed in the arguments that defendants had caused the courthouse to remain closed on the first two Saturdays after the time chapter 307, Acts of the Sixty-first General Assembly, became effective on July 4, 1965, as they believed the law invalid, that they desired a judicial determination as to its validity and did not consider their action as capricious or arbitrary, and that they opened the courthouse after plaintiff filed the petition herein.

██ We are not satisfied their good intention and later action provide an adequate excuse, for other remedies which

would not involve a defiance of the law were available to them. While their action in reopening the courthouse after the petition was filed was wise, it did not remove the basis of plaintiff's action and defeat his right to a legal determination of the arbitrary action complained of therein. See 55 C. J. S., Mandamus, section 53; 34 Am. Jur., Mandamus, section 54. Plaintiff, a resident taxpayer, had a legal right to enter the courthouse on July 17, 1965, to transact business therein, and it is clear he was prevented from doing so by defendants' actions. They were wrong in their belief the law was invalid, and that belief furnishes no valid excuse which will prevent an order herein. As bearing thereon, see Claussen v. Perry, 248 Iowa 108, 117, 79 N.W.2d 778. It must be concluded this action in mandamus was available to compel performance of the obligation and duty placed upon defendants by chapter 307 above mentioned.

VII. It is further contended defendants cannot compel other offices in the courthouse to remain open for business on Saturday mornings, and that may be so. However, we are not concerned with that issue here. The county courthouse must be kept open on Saturday mornings, and the offices of these defendants who are before the court must be open for business. As to the other offices referred to in this Act, it would appear the announced public policy applies to them, but they are not before the court now. It is clear they could not be open with the courthouse closed, but if they do not keep their offices open for business when the courthouse is open as required herein, in a proper proceeding the court, not the board, can command them to do so.

VIII. In view of the admissions, and our determination that chapter 307, Laws of the Sixty-first General Assembly, is not invalid, but commands the officers, deputies and clerks in the county to open their offices on Saturday mornings, except on holidays, we must set aside the dismissal by the trial court and grant the relief prayed, i.e., that defendants keep the courthouse and their offices open for the transaction of business on Saturday mornings, except on holidays.—Reversed.

All JUSTICES concur.