**STATE of Iowa, Appellee,**

v.

**Donald E. NICKELSON, Appellant.**

No. 53577.

Supreme Court of Iowa.

July 24, 1969.

Francis J. Mullen, Chariton, for appellant.

Richard C. Turner, Atty. Gen., James C. Sell, Asst. Atty. Gen., and William L. Shelton, County Atty., for appellee.

SNELL, Justice.

Defendant appealed from judgment following conviction of violating section 710.12 (Embezzlement of secured interest in collateral), 1966 Code of Iowa.

Defendant in the trial court by demurrer, motion to dismiss and motion in arrest of judgment challenged and in this appeal challenges the statute as not constitutionally enacted.

The facts from which the problem arose are not in issue here.

On January 8, 1966 Donald E. Nickelson and June Nickelson executed in favor of Corydon State Bank what was then called a chattel note for $1800 due December 7, 1966 and pledging as security 30 black and black whiteface calves and 3 whiteface heifers.

On August 7, 1967 the grand jury of Lucas County returned an indictment charging Donald E. Nickelson with Embezzlement of Mortgaged Property (section 710.12, Code of Iowa) in that he had disposed of the mortgaged property without the consent of the mortgagee. The indictment was attacked by demurrer.

Section 710.12, Code of 1962, provided:

"Embezzlement of mortgaged property. If any mortgagor of personal property or purchaser under a conditional bill of sale, while the mortgage or conditional bill of sale upon it remains unsatisfied, willfully and with intent to defraud, destroys, conceals, sells, or in any manner disposes of the property covered by such mortgage or conditional bill of sale without the written consent of the then holder of such mortgage or conditional bill of sale, he shall be guilty of larceny and punished accordingly."

The indictment conformed to the language of this section.

While the indictment did not so state it was treated as a charge under the Code of 1966 but using the words of the statute as it appeared in the 1962 Code.

Section 10153, chapter 413, Laws of the 61st General Assembly, effective July 4, 1966 specifically repealed section 710.12, Code of 1962 and enacted a substitute. This will be discussed infra.

The trial court held that the indictment did not sufficiently conform to the requirements of section 777.2(1), Code of Iowa to support a charge under the new statute. The demurrer was sustained and the cause ordered resubmitted to the grand jury (section 777.9, Code of Iowa).

The proceedings to this point were preliminary to our present problem and are neither attacked nor involved in this appeal.

On November 29, 1967 the grand jury returned a new indictment using the words as they then appeared in the new statute. Section 10153, chapter 413, Laws of the 61st General Assembly, now section 710.12, 1966 Code of Iowa.

Following the overruling of his demurrer and motion to dismiss defendant was tried to a jury and found guilty. His motion in arrest of judgment was overruled and judgment was pronounced.

He appealed and we have the problem raised by his challenge to the statute.

I. Article III, section 29, Constitution of Iowa, provides:

"Every act shall embrace but one subject, and matters properly connected therewith; *which subject shall be expressed in the title.* But if any subject shall be embraced in an act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be expressed in the title." Emphasis added.

An article in 8 Drake Law Review 66, written in 1958, begins with these words:

"Before a bill becomes a law, it must necessarily be placed in constitutional form. * * *

"The bill-drafter should determine whether the embryo law contains two or more unrelated subjects, in which case a separate bill for each will be necessary. He must assure that the title of the bill is one which fairly apprises as to the subject matter contained therein. * * *

"There are three apparent phases of this section, although the opinions do not generally sharply so separate: first, only one subject (and matters properly connected therewith) shall be in an act even though two are mentioned in a title; second, a

particular subject is invalid if not expressed in the title; and third, invalidity of a subject in an act not covered by the title thereof does not invalidate remaining portions covered by the title. * * *

"There have been about ninety cases before the Iowa Supreme Court in which the validity of a statutory provision has been assailed for noncompliance with this constitutional section or its predecessor, but there have been only nine opinions discovered in which the Court has held a statutory provision invalid because of such noncompliance. * * *"

Since this article was written we have considered such an assault in several cases. The number of successful attacks has not increased.

II. Before analysis of the particular situation before us certain well established and noncontroverted principles may be stated briefly and without exhaustive discussion or citation of authority.

In State v. Talerico, 227 Iowa 1315, 1322, 290 N.W. 660, 663, frequently cited, quoted and referred to as a landmark case, this appears:

"In passing upon the constitutionality of acts of the legislature such acts are given the benefit of a presumption in favor of constitutionality. An act of the legislature will be declared unconstitutional by the courts only when it is clearly, plainly and palpably so, and it is the duty of the courts to give such a construction to an act, if possible, as will avoid this necessity and uphold the law. State v. Woitha, [227 Iowa 1] 287 N.W. 99, 123 A.L.R. 884; Witmer v. Polk County, 222 Iowa 1075, 270 N.W. 323.

"The decisions involving the sufficiency of title to legislative enactments lay down certain general rules. It is held this constitutional provision should be liberally construed so as to embrace all matters reasonably connected with the title and which are not incongruous thereto or have no connection or relation therewith. It was designed to prevent surprise in legislation, by having matter of one nature embraced in a bill whose title expressed another. However, the title need not be an index or epitome of the act or its details. The subject of the bill need not be specifically and exactly expressed in the title. It is sufficient if all the provisions relate to the one subject indicated in the title and are parts of it or incidental to it or reasonably connected with it or in some reasonable sense auxiliary to the subject of the statute. It is unnecessary that each thought or step toward the accomplishment of an end or object should be embodied in a separate act. Nor is it important that a law contain matters which might be and usually are contained in separate acts or would be more logically classified as belonging to different subjects provided only they are germane to the general subject of the act in which they are put."

These rules remain the law. Long v. Board of Supervisors of Benton County, 258 Iowa 1278, 142 N.W.2d 378; Graham v. Worthington, 259 Iowa 845, 146 N.W.2d 626; State v. Social Hygiene, Iowa, 156 N.W.2d 288.

III. In 1965 the 61st General Assembly enacted our Uniform Commercial Code. It was a complete revision and overhaul of our commercial law. It appears as chapter 413, Laws of the 61st General Assembly. It has many sections and covers 151 pages in the laws as published. It has a severability clause. Section 1108. Section captions are parts of the Act. Section 1109.

Section 10155 provides:

"Notwithstanding any other provision of the 1962 Code of Iowa, this Act shall, insofar as possible, be included in the Code of Iowa as chapter five hundred fifty-four (554) with the section numbers of this Act as the section numbers of chapter five hundred fifty-four (554), and the Articles, Parts and descriptive word titles to be retained as in this Act."

Most of the sections and with corresponding numbers now appear as part of

chapter 554, Code of 1966, entitled Uniform Commercial Code. It is of some significance that section 10153 of the Act, the one involved herein and quoted, infra, is not so included. It appears as section 710.12 of the 1966 Code, and a part of the chapter on embezzlement and under Title XXXV covering criminal law. This was a logical arrangement by the code editor and pursuant to the statute.

The Act took effect July 4, 1966. Section 10101. The indictment in the case at bar charged an offense on or about October 1, 1966.

Section 10153 of the Act and, except for the first (repealing) sentence, now section 710.12 reads as follows:

"Section seven hundred ten point twelve (710.12), Code 1962, is repealed and inserted in lieu thereof is the following: 'If any debtor who has given a security interest in collateral willfully and with intent to defraud, destroys, conceals, sells, or in any manner disposes of the collateral while the security interest remains unsatisfied and without the written consent of the secured party, he shall be guilty of larceny and punished accordingly.'"

It should be noted that the old statute in the Code of 1962 was specifically repealed and a new provision inserted in lieu thereof. There is no saving clause.

Section 10154, now section 710.13 of the Code, relates to evidence of the offense.

With the old statute repealed and there being no saving clause the question is squarely presented. Was this section of the Act constitutionally enacted? Is the subject of the section embraced in the title?

IV. The title to the Act is as follows:

"AN ACT to be known as the Uniform Commercial Code, relating to certain commercial transactions in or regarding personal property and contracts and other documents concerning them, including sales, commercial paper, bank deposits and collections, letters of credit, bulk transfers, warehouse receipts, bills of lading, other documents of title, investment securities, and secured transactions, including certain sales of accounts, chattel paper, and contract rights; providing for public notice to third parties in certain circumstances; regulating procedure, evidence and damages in certain court actions involving such transactions, contracts or documents; to make uniform the law with respect thereto; and repealing inconsistent legislation."

In this title there is not one word as to any prohibited act or criminal penalty for violation. There is reference to repeal of inconsistent legislation but no mention of provisions enacted in lieu thereof.

Section 10102 of the Act is a specific repealer identifying chapters and sections of the 1962 Code that were repealed. There are then many sections making substitutions mostly for the purpose of harmonizing the names of instruments and transactions.

Section 710.12, Code of 1962 is not included in the specific repealer but is specifically repealed by section 10153 of the Act. The new section does nothing more than change the terminology of the old statute to bring it in harmony with new terminology, but it does repeal the old and attempt to enact a new statute. Resultantly, it must be treated as a new statute.

The title to the Act, quoted supra, is long and comprehensive. It covers by reference a multitude of civil transactions and remedies, contract rights, evidence and damages incident to breach of contract obligations. The threat of prosecution for larceny might be a club over the head of a defaulting debtor, but it is not an element of damage for breach of contract. The title to this Act contains nothing indicating criminal responsibility. A prosecution for a criminal act might depend for its proof the doing of an act that is also the breach of a contract obligation if there is a statute making the act criminal, but prosecution for crime is not a contract right. There may, of course, be both civil and criminal

liability for the same act. Neither civil nor criminal procedure is necessarily exclusive. They are separate and distinct.

No one reading the title to the Act would be alerted or be led to think that on the 151st page there was a recitation and prohibition of acts that might lead to five years in the penitentiary.

V. Nowhere in the cases unholding statutes similarly attacked do we find such a complete vacuum between the title and the statute as we have here.

In State v. Talerico, supra, an amendment to an original act was attacked as not germane. It was held that a provision forbidding beverages containing more than 4 percent alcohol in a place where beer is permitted to be sold in germane to an act relating to the sale of 4 percent beer. (loc. cit. 1323, 290 N.W. 660) No direct attack was made on the criminal penalty section. (loc. cit. 1317, 290 N.W. 660)

Such is not the case here.

VI. State v. Cowen, 231 Iowa 1117, 3 N.W.2d 176, was a prosecution for illegal possession of gambling devices. The title to the act referred to prohibition of possession of forbidden property, i. e. gambling devices. The first section of the act prohibited possession. The second section provided for seizure, hearing and order for destruction.

No other or specific penalty was provided for violation.

A statute provided: "When the performance of any act is prohibited by any statute, and no penalty for the violation of such statute is imposed, the doing of such act is a misdemeanor." The same statute now appears as section 687.6, Code of 1966. Punishment is provided by section 687.7, Code of 1966.

The Cowen case discussed whether seizure of illegally possessed articles constituted a penalty to the exclusion of the penalty otherwise provided. The authority of that case is not helpful here. In that case there was a positive prohibition. It is the title indication that something is proscribed and not the specific penalty that is important. In the case before us the title to the act does not contain a word of prohibition or reference to any prohibited act.

VII. In State v. Chenoweth, 226 Iowa 217, 284 N.W. 110, defendant was charged with circulating obscene matter. Among other grounds the sufficiency of the title of the act was attacked. The attack was sustained on other grounds and the constitutionality of the act was not determined. The thinking of the court, however, is expressed in these words:

"We have quoted the constitutional provision as to the mandatory requirements to be expressed in the title to legislative acts, and we have also quoted the title to the act in question for the purpose of calling attention to the apparent failure in the title to the act to comply with the constitutional requirements. The title does not even infer that the act creates or defines a crime. It simply indicates that the circulation, advertising, and vending of obscene literature, etc., may be suppressed and the articles confiscated. There is not even an intimation in the title that it is unlawful to so circulate or advertise or that punishment may be inflicted upon a person violating any of the provisions of the act. * * *" (loc. cit. 220–221, 284 N.W. 110, 112)

In State v. Social Hygiene, supra, we expressed disapproval of this broad statement, but the words in a more limited sense are applicable to the case before us. (See Division IX for distinction)

VIII. In Jones v. Mills County, 224 Iowa 1375, 279 N.W. 96 and cases cited therein, it is held that changes made by a revision of the statutes will not be construed as altering the law, unless it is clear that such was the intention. In the case before us we have a repeal of the old law before the insertion of the new provision. It is true that section 10153, chapter 413,

Laws of the 61st General Assembly is a rewording and updating of an old statute. It does not make criminal anything that was previously legal. In that sense it was not new. This, however, provides little comfort for the prosecution. The section was not treated by the legislature as a mere revision. The old statute was specifically repealed and a new one substituted.

IX. Our latest consideration of the sufficiency of the title to a criminal statute was in State v. Social Hygiene, supra, decided February 6, 1968. We reviewed the authorities. That review need not be repeated here. The original act under consideration had as its title "An Act to Suppress" enumerated acts. We upheld the constitutionality of the act. We disapproved language from State v. Chenoweth, quoted supra, and held that there was no requirement that reference to penalty appear in the title to an act of the legislature. We did not hold that a title completely void of any reference to acts to be prohibited was sufficient.

X. The title of the Act before us is silent as to any act that is prohibited or that might lead to criminal prosecution. In that particular it fails to meet constitutional requirements. Not even the presumptions in favor of constitutionality in which we indulge are enough to show where the subject of section 710.12, Code of 1966 is "expressed in the title" of the Act as passed by the legislature.

We reach this conclusion with reluctance because it would be preposterous to think that the legislature knowingly created a void in our criminal law or repealed an old statute and enacted an invalid one. However, as the many pronouncements on the subject say our constitution is written to proscribe enactments "not expressed in the title."

Regardless of our conclusion as to the intent of the legislature in enacting a monumental revision of our commercial law it is not within our power to legislate or read into the title of the Act words that are not there. We may not disregard the clear mandate of the constitution in interpreting the intent of the legislature.

XI. Our conclusions herein apply only to what is now section 710.12, Code of 1966, and in no way reflect on chapter 554, Code of 1966.

The case is reversed and remanded with directions to sustain defendant's motion in arrest of judgment and dismiss the charge.

Reversed and remanded with directions.

All Justices concur, except STUART, J., who takes no part.